The first case for oral argument is B v. Sparta Community Hospital. Counsel, whenever you're ready, there's a seat. Mark Dean for the appellant, Dr. Lee Peter Beef. The main crux of the issue before the court is the interpretation of the words and and or in a non-competition clause in an employment contract, in this case between Dr. Bee and the defendant appellee of Sparta Community Hospital. It's important to keep in mind when looking at this case that this deals with a restrictive covenant and the Illinois courts have said that these are strictly construed and any doubts must be resolved in favor of natural rights and against restriction. And the effect of this rule, as stated in Haggerty 85 LF 3rd 640 4th District Court of 1980, the effect of this rule is to place the burden on the party seeking to restrict competition. The clause in question states that Dr. Bee, following the termination of the agreement, shall not, to paraphrase, engage in the practice of medicine within a 25 mile radius of the city of Sparta and B, solicit patients of the district to become the private patients of Dr. Bee following the termination of his employment with the Sparta Community Hospital. And the word is and. The word is and in the contract agreement. And a plain reading of that provision allows Dr. Bee to either practice medicine within a 25 mile radius of the city of Sparta or solicit any patient he treated while an employee. There is no ambiguity in the provision and as this court knows it must look to the contract language alone. Did he ask written consent, because that language is in there, it says without written consent. Did he ask for written consent? I believe at least orally he did. Well, that's not written if it's oral, is it? Well, that's correct, Your Honor. I'm not sure that provision really plays into effect. He did have some written consent to have some staff privileges at Sparta Community Hospital and that was the only written consent they gave him. Obviously, they are disputing that the contract provision, Sparta is saying that he can't do either one of the activities enumerated in A or B. In contract interpretation matters, in English I think the word and is strictly and presumptively conjunctive. The courts have said that you can substitute or for and, but only where there is an evident intention that the contract meant to say or. An evident intention is not, well looking back at it now, it looks like that's what Sparta meant to say. An evident intention is that the language as written reaches some absurd result or is incoherent as written and that's not what we have here. Obviously, Sparta is now saying they wanted to write the contract differently and maybe you can speculate on that's how they would have written the contract, but again that is not an evident intention. An evident intention is that the language itself is absurd or incoherent and it's not incoherent as written under Dr. B's interpretation. If the court does find that there is an evident intention, it then has to go to the next step and that is to find that there are strong reasons to substitute the words and and or and that the context favors substitution. In this case, there is no strong reason to favor a substitution restricting Dr. B's rights. If anything, there's a strong reason to read it as Dr. B is urging the court to interpret it because again he is the party, Dr. B is the party seeking to exercise his natural rights under the restrictive covenant and the Sparta Community Hospital is seeking to restrict those natural rights. Again, as stated in Office Max v. U.S., 428 Bed 3rd, it's a Sixth Circuit case out of 2005. Obviously, there's not a lot of case law in the interpretation of and and or, but in that case, the court said when courts have interpreted and disjunctively, they have done so only to avoid an incoherent reading and there is nothing incoherent about the languages written. The fact that Sparta Community Hospital possibly meant to employ different language does not mean that there is an absurd result simply because now they are unhappy with the result in this particular case on the Monday morning football terms after the Sunday game. Dr. B requests that this court reverse the final judgment order granting defendant's counter motion for summary judgment and denying plaintiff's motion for summary judgment and remand the case for further proceedings to Randolph County, Illinois. Thank you, counsel. I do have one more question, I'm sorry. So if it should be or, does that mean that on Monday he could engage in the practice of medicine and on Tuesday solicit patients and then on the next day go back and forth? Can he go back and forth? Well, it's not clear under the contract. Again, Sparta Community Hospital, they were the party that basically, it's a contract of adhesion basically. If they didn't spell that out, it has to be interpreted against them. Under that interpretation, he could do both. Under that interpretation, I mean, given his most broad scope, he could go back and forth. I don't think that would be his, in practical purposes, that would be what he'd be wanting to do. But again, you have to look at the contract in the realm of a restricted covenant where every doubt has to be construed against, in this case, Sparta Community Hospital. Thank you. Thank you, counsel. Counsel? May it please the Court, counsel, Eric Van Dorn for Sparta Community Hospital. This case involves a contract that was entered into between two sophisticated parties in an arm's-length transaction. Dr. B received a substantial salary in exchange for his agreement to perform certain physician services at Sparta Hospital. He also agreed to certain limited restrictive covenants upon the termination of that contract, and he expressly acknowledged in Section 5.3 that he received consideration for those restrictive covenants. There is no question that restrictive covenants in physician contracts are valid and enforceable. The Illinois Supreme Court helped as much in the pantheon as the St. John's Heart Clinic. And there's also no issue in this case, at least none raised by Dr. B, regarding the reasonableness of these restrictions, the 25-mile radius, the two-year limit. Those aren't an issue either. The only issue is the proper interpretation of Section 5.3. And the Illinois Supreme Court has given us clear guidance on how to interpret a contract. In Gallagher v. Leonard, the Illinois Supreme Court said the primary objective in construing a contract is to give effect to the intent of the parties. The Court also said that because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the other. And the Illinois Supreme Court finally said that the intent of the parties is not to be gathered from a detached portion of a contract or from a plausible provision standing by itself. If one follows these guidelines and interprets this contract as a whole in a manner that gives effect and intent to the parties, then the proper interpretation is the one advocated by Sequoia Hospital and the one found by the trial court in this case. If we look at the contract as a whole, in Section 5.1, Dr. B acknowledged that, quote, the district, that's the hospital, has made and will continue to make a substantial investment in developing the trust and confidence of its patients and their allegiance to the district. Dr. B also acknowledged in Section 5.1 that if he were to leave the practice and, quote, establish or join a healthcare entity in competition with the district, that's the hospital, that his departure would jeopardize the legitimate business interests of the district or the hospital. Dr. B also acknowledged in Section 5.3 that these limited restrictions, restrictions plural, are, quote, reasonable and necessary to protect the legitimate professional and business interests of the district, and that any violation of such restrictions, again, restrictions plural, would result in irreparable injury to the district. In this context, the clear intent of the contract is that Dr. B is to be restricted from, A, setting up a practice within 25 miles of Sparta Hospital, and he's restricted, B, from soliciting Sparta Hospital patients for the limited time of two years. Dr. B's interpretation would turn this intent on its head. Under Dr. B's interpretation, he would be allowed to terminate the contract and immediately compete with Sparta Hospital. And not only would he be able to immediately compete with Sparta Hospital, but he would be able to choose his method of competing with Sparta Hospital. As an example, under Dr. B's interpretation, he could terminate the contract, set up a practice 25 miles outside of Sparta, and immediately, on day one, go solicit current patients of Sparta Hospital. That is, by definition, competition and competing. And that's, by definition, what is not allowed in this limited restrictive covenants. In fact, one of the cases that Dr. B cites, Hagerty et al. v. Ginsky, that was the issue in that case. What is competition? What is competing? And the court stated that whatever else it is, we know soliciting former customers or patients of your employer, that we know is competition. Soliciting is competition. So allowing Dr. B to do this is also in direct contradiction to his acknowledgement in Section 5.1 that the hospital has a legitimate interest in its patients, and that by competing during this two-year period, Dr. B would jeopardize those interests. And so I think the analysis really can stop there, because it is an unreasonable interpretation of the contract to allow Dr. B the choice of terminating the contract and on day one soliciting patients of the hospital. It's clear that that is not the intent. There's nothing ambiguous about that. That's not the intent of the contract. But Dr. B would also be competing if he made the other choice that he would grant himself under his interpretation of the contract. Under his interpretation of the contract, his other choice is he could terminate the contract and immediately on day one set up his own practice right next door or right across the street from Sparta Hospital and immediately compete with Sparta Hospital for other members of the Sparta community. Again, this is the competition that he agreed for two years he would not do in exchange for consideration in the contract. And as Your Honor pointed out, presumably under Dr. B's interpretation of the contract, he would have a third option, and that is terminate the contract and on day one set up a practice 25 miles outside of Sparta Hospital, immediately solicit current Sparta Hospital patients, and then change his mind a month later, a few months later, six months later, but still within this two-year restrictive period, change his mind and set up a practice right next door to Sparta Hospital, but simply not solicit new current patients of Sparta Hospital. There's no provision in the contract for how that would work, and so that is not a reasonable interpretation of what he's permitted to do under the contract. One does not need to substitute words in this contract to come to this reasonable interpretation. All one needs to do is to put a common sense interpretation on the opening phrase, physician shall not, to simply apply that opening phrase, physician shall not, to both Clause A and Clause B, which was the intent, clear intent of the contract. Physician shall not do Clause A. Physician shall not do Clause B. And, in fact, that is exactly what the court did in one of the cases cited by Dr. B, that's Sosa v. Chase, Manhattan. There the issue was interpretation of language in a statute, and the language was this, no person shall give and, use the word and, no person shall accept, that's the quote, payment under certain circumstances. Just as here, the issue was whether it was a violation of that clause for one to do just one of those things, or it's only a violation if you do both. It's the same issue as it is here, and the court interpreted the connector and, in that case, the quote create two separate prohibitions. It's a violation if the person gives payment. It's also a violation if the person receives payment, and that's exactly the interpretation that is reasonable and found by the trial court here. It's a violation for Dr. B to set up a practice within 25 miles of Spartan Hospital, and it's a violation in two years to solicit patients at Spartan Hospital. Illinois courts have also interpreted and in this disjunctive manner when the context permitted and allowed it to do so, when that was the reasonable interpretation in the context. In the Bank of Homewood versus Joe, that was a case about a guarantee on a promissory note, and it was a guarantee of grants of credit to three individuals, Ralph Cho, Ralph Joe, and an entity called Cooper Hospital, Ralph Cho, Ralph Joe, and Cooper Hospital. And the issue was, well, does that only apply if a guarantee is conjunctive for all three of them, or does it apply individually to each of them? And the court said even though the word and is used, we interpret that in the disjunctive because that's the one that makes sense in the context. It applies to Ralph Cho, Ralph Joe, separately also to Cooper Hospital, Inc. And the court said in order to effectuate the intent of the parties to a contract where the intent is clear, the word and may be construed to mean or. Similarly, in Illinois case Boss versus LaSalle Bank that involved redemption of mutual funds, the issue was whether that redemption needed to be made by telephone and writing. And the issue was, well, does that mean you have to give the notice by telephone and also give it in writing, or you have the choice. You can do it by telephone and you can give it in writing. And the court again interpreted and in the disjunctive. And said it's reasonable in this context that and there means that you can give the notice by telephone. And you can also give it by writing. You don't need to do both. And the court said in order to effectuate the intent of the parties to a contract where the intent is evident, the word and may be construed to mean or. They said there the purpose and context favored the substitution because the intent of the parties is evident. All of these cases are set against the backdrop of the guidance we get from the Illinois Supreme Court that the primary objective in construing a contract is to give effect to the intent of the parties. Even the cases that Dr. B. cites where the courts interpreted and in the conjunctive sense, they recognize that you still have to look at the context of the agreement or the language at issue. And in the appropriate case, use the disjunctive. In Office Max v. U.S., one of the cases Dr. B. cited, they noted that and should be interpreted in the disjunctive when the conjunctive quote makes little or no sense in the context, close quote. Here it makes little or no sense to allow Dr. B. to terminate his contract and immediately solicit patients of support in the hospital. Similarly, in Chicago Lane Clearance Commission v. Jones, the Illinois court said it is of course true that in order to effectuate the intent of the parties to a contract where the intention is evident, the word and may be construed to mean or. The proper interpretation in this case is that Dr. B. entered into a contract and received consideration for his agreement for a limited time of two years not to set up a competing practice within 25 miles of Sparta Hospital and also not to solicit current patients of Sparta Hospital for that limited time. In seven and a half months from right now, Dr. B.'s restrictive period will be over. So in seven and a half months, Dr. B. will be free to set up whatever practice he wants, wherever he wants, and solicit any patients that he wants, including current patients of Sparta Hospital. But until that time, he should be required to comply with the terms of the agreement that he signed. Thank you. Thank you, Counsel. Counsel? Thank you. Dr. B. urges this court to read the plain provision of Section 5.3, which is titled the non-competition provision of the contract. Sparta Community Hospital attempts to point to other provisions in the contract, such as Section 5.1 and 5.4, to argue that the context of the contract shows something different than the plain language of the non-competition covenant. Section 5.1, Dr. B. acknowledges that the defendant has valuable information. The defendant has invested in establishing the trust and confidence of its patients, and that Dr. B.'s competing with defendant would jeopardize defendant's legitimate business interest. Dr. B. does acknowledge that in Section 5.1. But Sparta Community Hospital attempts to skip the entire issue by not looking at its own definition in Section 5.3 of what competition is. Section 5.3 defines competition in this contract, not what some other court has said relating to a different contract provision. In fact, in the case they cite, it just said competition, so it was unclear what competition meant. In this case, we have a definition of competition, and it's what's plainly set out in Section 5.3. Section 5.4, Sparta places weight on the fact that it says restrictions in the plural. But even if that had some sort of merit, the use of the word restrictions does not mean or even imply that the restrictions in 5.3 are conjunctive. And even if that argument is not, even if defendant's argument had merit additionally, a reading of the relevant contract provision in 5.3 reveals that there is more than one restriction in Section 5.3a, which reads, Dr. B. shall not engage in the practice of medicine in the city of Sparta, Illinois, or within the 25-mile radius of the outer physical limits of the city of Sparta, Illinois, or the city of physician's then current practice site, or within the 25-mile radius of the outer physical limits of the city of Sparta, or the location of such practice site, etc. So there are various restrictions within Section A to the extent Section A alone is understandable. Again, Section 5.3 defines what competition is, and it can be clearly read without any need to go to outside interpretation, which Sparta is urging the court to do. In the case of Chicago land clearance, the court said that the party's intent is first and foremost to be gleaned from the language used in the contract. And in Boas v. LaSalle Bank v. Invesco Funds Group, the court did construe antiminor. In that case, there was a strong reason to favor the individual shareholder over Invesco's interpretation. That case did not involve a restrictive covenant. And again, this case has to be viewed by this court in the context of a restrictive covenant, which the court in Hagerty indicated that all doubts must be construed in favor of Dr. B. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.